UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States

v.                                                    Crim. No. 2:12-cr-147

Ramell Holder

## REPORT AND RECOMMENDATION
(Doc. 154)

Ramell Holder, proceeding *pro se*, has moved under 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence imposed upon him in this district following his plea of guilty to one count of engaging in a conspiracy to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, and one count of money laundering, in violation of 18 U.S.C. §§ 1957(a), 2.  (Doc. 154.)  On December 16, 2013, United States District Judge William K. Sessions III sentenced Holder to a term of imprisonment of 168 months, to be followed by a four-year term of supervised release.  (Doc. 129.)

Holder now asserts that he received ineffective assistance of counsel prior to his plea of guilty and at the time of sentencing, in violation of the Sixth Amendment to the United States Constitution.  Holder also asserts that his counsel was ineffective for failing to pursue a rehearing or en banc review following the Court of Appeals' rejection of his challenges to his sentence in his direct appeal.  For the reasons set forth below, I recommend that Holder's § 2255 Motion (Doc. 154) be DENIED.

## Background

### I.      Preliminary Proceedings and Plea Agreement

On November 15, 2012, an Indictment was filed in this district charging Holder,
Jacky Castro, Marcus Sinclair, and Erin McKenna with numerous violations of the
Controlled Substances Act.  (Doc. 1.)  At Holder's initial appearance following his arrest,
Assistant Federal Public Defender David McColgin was appointed to represent Holder.

On June 7, 2013, an Information and Plea Agreement were filed in the district
court.  (Docs. 67, 68.)  With benefit of counsel, Holder agreed to waive his right to
proceed by means of indictment and plead guilty to two felony violations charged in the
criminal Information, and to forfeit certain specified property.  (Doc. 68 at 1.)
Specifically, Holder agreed to plead guilty to engaging in a conspiracy to distribute 500
grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846
(Count 1), and money laundering, in violation of 18 U.S.C. § 1957(a) (Count 2).  (*Id.*)
Holder also agreed to forfeit his interest in an automobile, cash seized from various bank
accounts, and a parcel of real estate.  (*Id.* at 5–6.)  Holder acknowledged in the Plea
Agreement that by his plea of guilty to Count 1, he faced a mandatory minimum term of
imprisonment of five years up to a maximum of 40 years.  (*Id.* at 1.)  He also
acknowledged that any estimates or predictions relative to the Guidelines calculations
were not binding on the Court, and that any erroneous estimates or predictions regarding
his sentence made by his attorney would not provide grounds for withdrawal of his plea,
modification of his sentence, or appellate or post-conviction relief.  (*Id.* at 3.)

For its part, the United States agreed that: (1) Holder would not be prosecuted in the District of Vermont for any other criminal offenses known to the United States to have been committed by Holder in the District of Vermont relative to the conspiracy to distribute cocaine and money-laundering charges; (2) it would recommend that Holder receive an offense-level reduction under the advisory United States Sentencing Commission Guidelines for his manifestation of an acceptance of responsibility pursuant to USSG § 3E1.1(a) and (b); and (3) the case against Holder's girlfriend, Erin McKenna, would be dismissed.  (*Id*. at 4–5.)

## II.     The Arraignment and Plea Proceeding

On June 12, 2013, Holder appeared before Judge Sessions and, under oath, waived his right to proceed by indictment and pled guilty to the offenses charged in the Information.  (Doc. 147.)  A review of the transcript reveals that Judge Sessions engaged in the complete colloquy required by Fed. R. Crim. P. 11 to assure that Holder's plea was voluntary.  Judge Sessions first ascertained that Holder was not under the influence of any drugs or alcohol.  (Doc. 147 at 4.)  He then reviewed the charges in the Information, and Holder acknowledged that he understood the elements of each offense and the maximum penalties provided for each by law.  (*Id*. at 6–9.)  Judge Sessions explained to Holder his constitutional rights, and Holder stated that he understood he was waiving those rights by pleading guilty.  (*Id.* at 10.)  Judge Sessions ascertained from Holder that no one had threatened or coerced Holder into pleading guilty, and carefully reviewed the plea agreement with Holder.  (*Id.* at 11–14.)  Under oath, Holder stated that he had reviewed the Sentencing Guidelines with Attorney McColgin.  (*Id.* at 16.)

3

When Holder was asked if anyone had predicted what the likely sentence would

be, the following discussion occurred:

> The Court:  Has anyone made any promises or predictions as to what sentence you are likely to receive?

> The Defendant:  Ah—

> (Defense counsel and defendant confer briefly.)

> The Court:  You may have gone over ranges within the guidelines—

> Mr. McColgin:  Right.

> The Court:—but has anyone told you that this is likely to be the sentence that you are going to get?

> The Defendant:  Ah, ah, I don't remember.

> (Defense counsel and defendant confer briefly.)

> Mr. McColgin:  Your Honor I have explained the guideline ranges to him and different possibilities and explained it depends largely on the quantity that the Court—quantity of drugs involved, and the Court will have to make a determination as to that.  I have explained that to him.

> The Court:  And the potential for a downward adjustment or variance.

> Mr. McColgin:  That as well, [Y]our Honor.

> The Court:  All right.  Do you understand that?

> The Defendant:  Yes.

> The Court:  Do you understand that any promises or predictions as to what sentence you are likely to receive are not binding upon the Court?  Based [upon] your guilty plea, I could impose a sentence up to the maximum permitted by law and that you would not have the right to withdraw your plea if the predictions proved to be inaccurate?

> (Defense counsel and defendant confer briefly.)

> The Defendant:  Yes.

(*Id.* at 16–17.)  Holder acknowledged that the Sentencing Guidelines were advisory in nature and that the Court had the power to impose a sentence that was more or less severe than called for by the Sentencing Guidelines.  (*Id.* at 17–18.)

The Court then solicited a statement of facts from the Assistant United States Attorney (AUSA) in order to determine if there was a factual basis for each charge. (*Id.* at 18.)  The AUSA stated that investigators had accomplished eight controlled purchases of cocaine during the investigation, totaling approximately 450 grams of cocaine, and that seven of these purchases were made from Holder himself.  (*Id.* at 19–20.)  The AUSA further stated that, if the case were to be tried, competent witnesses would testify that during the conspiracy they received over 9 kilograms of cocaine from Holder.  (*Id.* at 20.)  The AUSA described an extensive financial investigation into the activities of Holder and his coconspirators, including evidence of substantial cash deposits into Holder's bank account and the seizure of $32,000 in drug proceeds from coconspirators Jacky Castro and Kyle Marrero at the Burlington International Airport.  (*Id.* at 19–21.)  According to the AUSA, a wiretap on two of Holder's cell phones intercepted communications which revealed that Holder was making regular trips to New York City to resupply with cocaine, and that Holder was distributing the cocaine to local distributors in Vermont.  (*Id*. at 20.)

The Court asked Holder if he agreed that the conspiracy involved the distribution of at least 500 grams of cocaine.  (*Id.* at 21.)  Holder initially responded: "[The AUSA] said 450," an apparent reference to the prosecutor's description of the total amount of

controlled cocaine purchases accomplished by the investigators.  (*Id.*)  Judge Sessions explained that the reference to "450" was the total amount of cocaine acquired during controlled purchases from Holder or his conspirators and that the indictment alleged the conspiracy involved the overall distribution of an amount in excess of 500 grams of cocaine.  The Judge again asked if Holder acknowledged this quantity, and Holder responded: "Yes."  (*Id.* at 22).  Holder also agreed that the illegal drug activity produced money that was then transferred to banks, in support of the money laundering charge. (*Id.*)  Judge Sessions accepted Holder's guilty plea, finding that it was entered into knowingly and voluntarily with full knowledge of the charges against him and the consequences of the plea.  (*Id.* at 23.)  Finally, the Judge ordered preparation of a presentence report.

## III.    The Presentence Report

In October 2013, the Presentence Report (PSR) was prepared by the United States Probation Office and submitted to the Court in anticipation of sentencing.  The PSR concluded that Holder faced an advisory Sentencing Guidelines imprisonment range of 324 to 405 months, based on an adjusted offense level of 40 and a Criminal History Category (CHC) of II.  (PSR ¶ 109.)  This sentencing range was determined as follows.[1] The base offense level was placed at level 34, based on a conclusion that Holder had

---

[1]  The PSR noted that the advisory Sentencing Guideline calculation with respect to the money-laundering offense was subsumed into the calculation for the more serious drug felony offense, as they were grouped together.  (PSR ¶¶ 50–51.)

trafficked in 15 to 50 kilograms of cocaine in the course of the conspiracy.  (PSR ¶ 52.)[2] Two levels were added because the defendant used violence and threatened violence during the offense conduct, pursuant to USSG § 2D1.1(c)(3).  (PSR ¶ 53.)

Two additional levels were added because Holder used a residence for the purpose of distributing cocaine, pursuant to USSG § 2D1.1(b)(12).  (PSR ¶ 54.)  Two levels were added because it was determined that Holder committed the offense as part of pattern of criminal conduct engaged in as a livelihood, pursuant to USSG § 2D1.1(b)(14)(E).  (PSR ¶ 55.)  Three levels were added pursuant to USSG § 3B1.1 (b), as it was determined that Holder played a managerial or supervisory role in the offense conduct which involved five or more participants.  (PSR ¶ 57.)  Finally, three levels were subtracted from the offense-level calculation pursuant to USSG § 3E1.1(a) and (b) because Holder had manifested an acceptance of responsibility.  (PSR ¶¶ 61–62.)  These adjustments resulted in a total offense level of 40.  (PSR ¶ 63.)  Holder's prior convictions, which included a prior drug felony conviction, yielded three criminal history points, placing him in CHC II.  (PSR ¶ 74.)

The PSR also noted that, as a consequence of his plea to the conspiracy charging the 500-gram drug quantity, Holder faced a statutory mandatory minimum term of imprisonment of five years, pursuant to 21 U.S.C. § 841(b)(1)(B).  (PSR ¶ 108.)

---

[2]  The evidence described in the PSR revealed that Holder had distributed as much as 61 kilograms during the offense conduct but the PSR adopted the 15–50 kilogram range.  (PSR ¶ 42.)

## IV.     Sentencing

Prior to sentencing, Attorney McColgin filed a written memorandum setting forth objections to the conclusions of the PSR. (Doc. 120.) Therein, Holder objected to the conclusion in the PSR that he was responsible for distributing between 15 and 50 kilograms of cocaine, correctly observing that the government bore the burden of proof on that issue. (*Id.* at 1.) Holder also objected to each upward offense-level adjustment described above, asserting that there was insufficient evidence to support the adjustments. (*Id.* at 1–3.)

Attorney McColgin also sought a downward variance from the applicable Sentencing Guideline range, asserting that: (1) Holder had demonstrated post-offense rehabilitation; (2) Holder played an important role as a father to two young children; and (3) the guideline imprisonment range was excessive, considering that Holder had never before been sentenced to a term of imprisonment, despite his prior criminal history. (*Id.* at 3–5.) Attorney McColgin buttressed his arguments with supportive letters, including a letter from a drug counselor describing Holder's commitment to counseling while incarcerated, a letter from Holder expressing remorse for his conduct, a letter from Holder's daughter detailing his important role as a father, a letter from Holder's son's mother discussing the effect Holder's incarceration has had on his children, and a letter from Holder's mother asking for mercy and stating that Holder was a good person who was loved by many. (Docs. 120-1, 120-2, 120-3, 123.)

On December 16, 2013, Holder appeared before Judge Sessions for sentencing. The Court conducted an evidentiary hearing on the factual objections to the PSR pursuant

to *United States v. Fatico*, 603 F.2d 1053 (2d Cir. 1979).  (Doc. 145.)  At that hearing,

witness Kyle Marrero testified that he was introduced to Holder by Marrero's sister, who

herself had been acquiring cocaine from Holder.  (*Id.* at 8–10.)  Marrero stated that he

received multiple-ounce quantities of cocaine directly from Holder once or twice a month

beginning in 2006 or 2007 and continuing until 2011 (*id.* at 12–13), and that on eight to

ten occasions he received a kilogram of cocaine per transaction from Holder (*id.*

at 13–14).  Marrero further stated that he traveled to New York City with Holder to assist

him in the acquisition of cocaine (*id.* at 15–17), and that he and Castro attempted to

transport approximately $40,000 to California to deliver to Holder, but the money was

seized by airport officials and, as a result, Holder was angry (*id.* at 18–20).  Marrero

described an incident where Holder threatened Marrero with a knife when Holder

believed Marrero had failed to pay for cocaine that Holder had supplied to him.  (*Id.*

at 23–24.)  Witness Chris Allen also testified at the hearing, stating that he regularly

purchased cocaine from Marrero.  (*Id.* at 44–47.)  He testified that in 2011, Holder was

upset at Marrero for not paying a cocaine debt and warned Allen that Marrero "had got

it" and that his "legs were going to get broke" (*id*. at 50).

 Following the evidentiary hearing, the Court heard argument of counsel on the

objections to the PSR.  Attorney McColgin asserted that Marrero was not credible,

arguing that Marrero's recollection was vague.  (*Id.* at 57–58.)  According to McColgin,

the evidence supported a drug quantity of only 500 grams to two kilograms of cocaine for

purposes of the advisory Sentencing Guidelines, and that the PSR's enhancement for the

use of "threats and violence" had not been established by the testimony.  (*Id.* at 58–60.)

McColgin asserted that the discord between Marrero and Holder might have been about an automobile sale, and that it was "simply [Marrero's] speculation" that it "had anything to do with drug dealing."  (*Id.* at 61.)  McColgin also objected to the enhancement for use of a residence, arguing that the "primary purpose" of the residence was for Holder, his girlfriend, and his son to live there, not for Holder to distribute drugs there.  (*Id.*)

Judge Sessions concluded that the evidence established that Holder had distributed at least 15 kilograms of cocaine for purposes of the advisory Sentencing Guideline calculation, describing it as "a very conservative estimate."  (*Id.* at 59.)  Judge Sessions declined to apply the "use of a residence" enhancement, noting that it appeared that many of Holder's sales did not occur in his house (*id.* at 78), but found that the remaining enhancements were established by the evidence and thus would be applied (*id.* at 77–79). The Judge concluded that the revised Sentencing Guideline range yielded a sentencing exposure of 262–327 months, based on an adjusted final total offense level of 38 and a CHC of II, prior to any variance.  (*Id*. at 88.)

Finally, Judge Sessions considered whether a variance or departure from the Sentencing Guideline imprisonment range was warranted, and thoroughly reviewed the sentencing factors set forth in 18 U.S.C. § 3553(a), including the seriousness of the offense conduct, the need for deterrence, the need to hold Holder accountable, the risk of recidivism, and keeping the public protected.  (*Id.* at 88–89.)  The Judge determined that there were both "positive and negative" characteristics and circumstances in this case. (*Id.* at 89.)  On the positive side, Judge Sessions found that Holder had strong family ties, some positive relationships within the community, a positive response to drug treatment

while incarcerated, and that, despite prior convictions, Holder had never before been incarcerated. (*Id.* at 89–90.) The Judge also noted that that there were no guns involved in the criminal conduct. (*Id.* at 90.) On the negative side, Judge Sessions found that Holder had been engaged in drug activity for multiple years, the offense involved a large quantity of cocaine being distributed over a significant period of time, and violence was involved. (*Id.* at 89.) Judge Sessions concluded that a "significant sentence" was required, in light of the public's need for safety, but that the guideline sentence was "too high." (*Id.* at 90.) The Judge adjusted the total offense level to 34 and applied a CHC of II, resulting in a sentencing range of 168–210 months. (*Id.*) Judge Sessions sentenced Holder to the low end of the range, 168 months (*id.* at 92), which represented a 94-month reduction from the low end of the otherwise applicable advisory Sentencing Guideline range.

## V.     Direct Appeal

Holder, through counsel, appealed from the judgment and sentence. In that appeal, Holder argued that: (1) the district court erred in attributing 15–50 kilograms of cocaine to Holder in the offense level calculation pursuant to USSG § 2D1.1; (2) the district court erred in applying a three-level enhancement for Holder's role as a "manager or supervisor" in the criminal conduct under USSG § 3B1.1(b); and (3) his sentence was disproportionate to those imposed upon his coconspirators. Holder also argued that these claims were not barred by an appeal waiver provision in the plea agreement. Assuming Holder's objections to the sentence were not barred by the appeal waiver provision in the plea agreement, the Court of Appeals found that Holder's claims lacked substantive merit

and affirmed his sentence in an unpublished summary order.  *See United States v. Holder*, 586 F. App'x 82 (2d Cir. 2014).  No timely petition for a panel rehearing or en banc review was filed.  However, shortly after the issuance of the mandate, counsel filed a motion to withdraw the mandate and for an extension of time to seek rehearing or en banc review.  The Court of Appeals denied the motion.

## VI.    Holder's § 2255 Motion

Holder now asserts in his § 2255 Motion that he received ineffective assistance of counsel.  Specifically, Holder argues that Attorney McColgin was ineffective by erroneously advising Holder that he faced a sentencing range of 5–9 years if he were to plead guilty.  (Doc. 154-1 at 4–13.)  Holder claims that he relied on this erroneous advice in deciding to plead guilty and would have otherwise proceeded to trial.  He states in an affidavit filed in support of the § 2255 Motion: "Mr. McColgin explained to me that if I did not plead guilty, the Government would 851 me, and that would raise my minimum mandatory sentence to 10 years.  He explained that if I pled guilty . . .[,] with Judge Sessions[,] I would get between 5–9 years."  (Doc. 154-2 at ¶ 3.)  Holder also argues that McColgin was ineffective in failing to object to Judge Sessions's improper "judicial fact finding," which formed the basis of the sentencing decision.  (Doc. 154-1 at 13–17.)  Finally, Holder claims that McColgin was ineffective for failing to petition the Second Circuit for a rehearing or en banc review, as Holder had requested.  (*Id.* at 17–18.)

Attorney McColgin has filed an affidavit responding to Holder's assertions.  (*See* Doc. 162.)  Therein, McColgin states that he told Holder that if he did not accept the government's plea offer, it was "very likely" that the government would (1) file an

information pursuant to 21 U.S.C. § 851 alleging that Holder had a prior drug felony

conviction[3] or (2) re-present the matter to the grand jury and seek a superseding

indictment of Holder and allege the distribution of more than five kilograms of cocaine.

(*Id*. at ¶ 3.)  Either one of these events would have increased the mandatory minimum

term to 10 years in prison.  In reality, the government could have pursued *both* courses of

action, and Holder would have faced a mandatory minimum term of imprisonment of

20 years to a maximum of life if convicted.  *See* 21 U.S.C. § 841(b)(1)(A).  McColgin

advised Holder of this predicament.  McColgin expressly denies that he told Holder that

"the most" Holder would face upon his plea of guilty was 5–9 years.  (Doc. 162 at ¶ 4.)

Rather, he states that he advised Holder that the Court could sentence Holder up to the

statutory maximum term of 40 years.  (*Id.*)  He also states that he explained to Holder

that, were Holder to accept the plea offer, under certain circumstances, Holder could be

sentenced to the minimum term of five years provided that sufficient facts were

submitted to the Court to support such a variance.  (*Id.*)

   McColgin explains in his affidavit that he prepared a chart for Holder's

consideration which laid out various sentencing ranges under the advisory Sentencing

Guidelines.  (*Id.* at ¶ 5; *see* Doc. 154-3.)  These ranges employed varying drug-quantity

calculations as assumptions.  The purpose of the chart was to explain to Holder the

precise benefits that would inure to him if he were to plead guilty as opposed to electing

to proceed to trial at any particular drug-quantity finding.  Significantly, the chart was

---

   [3] The PSR reflects that Holder had sustained a prior drug felony conviction.

purposefully devoid of the effect of possible guideline enhancements because, as McColgin explains, any enhancements were to be challenged at sentencing. (Doc. 162 at ¶¶ 5, 7.) McColgin denies Holder's assertion in the § 2255 Motion that McColgin told Holder that Holder would "never" receive a range of 11 to 19.5 years. (*Id.* at ¶ 6.) McColgin states that he advised Holder that the Sentencing Guidelines were advisory and that a sentencing judge could sentence an individual above or below the advisory range. (*Id.*) McColgin denies telling Holder that he would be sentenced based solely on the drug quantities he admitted to selling. (*Id.* at ¶ 9.)

McColgin also states in his affidavit that Holder's complaints of ineffective assistance due to McColgin's failure to object to "judicial fact finding" are without merit because the Sentencing Guidelines contemplate that a judge will have to make decisions about the application of various guideline sections, and the Sixth Amendment in fact permits such decision-making. (*Id.* at ¶ 8.)

## Discussion

### I.     Legal Standard

Under 28 U.S.C. § 2255, a federal prisoner may collaterally attack his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States." "[A] § 2255 motion is not a substitute for direct appeal," and courts "will not afford collateral review to claims that a petitioner failed properly to raise on direct review unless the petitioner shows (1) good cause to excuse the default and ensuing prejudice, or (2) actual innocence." *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012); *see Bousley v. United States*, 523 U.S. 614, 622 (1998); *United States*

14

*v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011).  Furthermore, it "is well settled that a

defendant's plea of guilty admits all of the elements of a formal criminal charge, and, in

the absence of a court-approved reservation of issues for appeal, waives all challenges to

the prosecution except those going to the court's jurisdiction."  *Hayle v. United States*,

815 F.2d 879, 881 (2d Cir. 1987) (citation omitted).

Alternately, a defendant is permitted to raise claims based upon ineffective

assistance of counsel in a § 2255 motion.  In criminal proceedings, a defendant has a

Sixth Amendment right to effective assistance from his attorney at all stages of the

proceedings, including when entering a plea of guilty, *see, e.g.*, *Strickland v. Washington*,

466 U.S. 668 (1984); *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Missouri v. Frye*, 132 S.

Ct. 1399, 1405 (2012), and at sentencing, *see, e.g.*, *Glover v. United States*, 531 U.S. 198,

202–04 (2001).

In order to succeed on a claim of ineffective assistance of counsel, a claimant must

meet the two-pronged test established by *Strickland*:

> (1) he must show that counsel's performance was deficient, so deficient
> that, in light of all the circumstances, the identified acts or omissions were
> outside the wide range of professionally competent assistance; and (2) he
> must show that the deficient performance prejudiced the defense, in the
> sense that there is a reasonable probability that, but for counsel's
> unprofessional errors, the result of the proceeding would have been
> different.

*Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011) (citations and internal quotation

marks omitted).  "The [ineffective-assistance-of-counsel] claim must be rejected if the

defendant fails to meet either the performance prong or the prejudice prong."  *Id.* at 85.

Regarding the first prong of the *Strickland* analysis, an attorney's representation is deficient when it falls "below an objective standard of reasonableness," as determined by reference to "prevailing professional norms." *Strickland*, 466 U.S. at 688; *see Morales v. United States*, 635 F.3d 39, 43 (2d Cir. 2011). The question is not whether counsel "deviated from best practices or most common custom," but whether his representation "amounted to incompetence under 'prevailing professional norms.'" *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690). "Constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690).

In assessing the attorney's performance, a court "must apply a 'heavy measure of deference to counsel's judgments,'" *id.* (quoting *Strickland*, 466 U.S. at 691), and must recognize "a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,'" *Palacios v. Burge*, 589 F.3d 556, 561 (2d Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).

As to the second *Strickland* prong, counsel's performance is prejudicial when it is so poor as to "undermine confidence in the outcome" of the proceedings such that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see Morales*, 635 F.3d at 43. In the context of a guilty plea, "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and

16

would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) ("[T]o obtain relief on this type of [*Strickland* ] claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."). "To raise a claim despite a guilty plea or appeal waiver, the petitioner must show that the plea agreement was not knowing and voluntary because 'the advice he received from counsel was not within acceptable standards.'" *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) (citation omitted) (quoting *United States v. Torres*, 129 F.3d 710, 716 (2d Cir. 1997)).

A § 2255 petitioner bears the burden of proving deficient performance and prejudice by a preponderance of the evidence. *See Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000) (petitioner failed to demonstrate a divergence between his interests and those of his attorney's on any factual matter, legal issue, or course of action). "Self-serving conclusory allegations . . . are insufficient to establish ineffective assistance of counsel." *Blumenberg v. United States*, Nos. 05 Civ. 9416(JGK), 01 Cr. 571(JGK), 2009 WL 3459185, at *3 (S.D.N.Y. Oct. 27, 2009) (citing *Torres*, 129 F.3d at 715–17).

## II.    Ineffective-Assistance Claim: Voluntary Nature of Holder's Guilty Plea

Holder claims that prior to his guilty plea, he received erroneous advice from Attorney McColgin concerning his overall sentencing exposure. Specifically, Holder asserts that McColgin told him that he would receive a sentence of "at most" 5–9 years, and that Holder would "never" be sentenced to a term between 11 and 19 years by Judge Sessions if he was to accept the government's offer and plead guilty. (Doc. 154-1 at 5.)

17

Holder asserts that his plea was therefore an involuntary one, because McColgin "clearly misgauged the sentencing exposure Mr. Holder faced." (*Id.* at 9.)

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). To evaluate a claim that a guilty plea was not knowing or voluntary due to ineffective assistance of counsel, a court employs the *Strickland* framework.

### A. Performance

As discussed above, Attorney McColgin's affidavit refutes Holder's assertion that McColgin assured him that Holder would receive a sentence of 5–9 years. In the affidavit, McColgin also denies Holder's claim that McColgin assured Holder that Judge Sessions would not sentence Holder to an 11–19.5-year range. McColgin states that he explained to Holder how the Sentencing Guidelines could be applied to him, including possible offense-level enhancements, and that he could be sentenced up to the maximum term of 40 years. The chart of sentencing ranges that McColgin prepared and reviewed with Holder are accurate portrayals of the sentencing range Holder faced at varying drug quantities, with and without an adjustment for acceptance of responsibility for pleading guilty. The accuracy of the chart corroborates McColgin's version of the events. McColgin credibly asserts that the chart was purposefully prepared without consideration of possible enhancements but that he in fact reviewed possible offense-level enhancements that might be applied in the sentencing equation.

18

Holder's current self-serving assertions of involuntariness or attorney coercion are undermined by his own allocution at his plea hearing.  "This testimony carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made."  *United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).  A court is "entitled to rely upon the defendant's sworn statements, made in open court . . . that he understood the consequences of his plea, had discussed the plea with his attorney, knew that he could not withdraw the plea, understood that he was waiving his right to appeal a sentence below [a certain number of months], and had been made no promises except those contained in the plea agreement."  *United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001); *see also United States v. DeJesus*, 219 F.3d 117, 121 (2d Cir. 2000) (rejecting the defendant's assertion that he did not knowingly waive his right to appeal in his plea agreement because that contention was inconsistent with his statements during the plea colloquy); *Torres*, 129 F.3d at 715 ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea.").

When asked if anyone had made any promises to him to induce him to plead guilty, Holder responded inconclusively, stating, "I don't remember."  (Doc 147 at 16.) Upon further inquiry, Holder told Judge Sessions that he fully understood that the Court could impose upon him the maximum sentence provided for under the statute.  (*Id.* at 17.)  Holder also acknowledged an understanding that any promises or predictions as

19

to what sentence he was to receive were not binding on the court.  (*Id.*)  These statements, made under oath, are inconsistent with a belief that a specific sentence would be imposed.  Attorney McColgin, an experienced and committed federal defender, flatly refutes Holder's assertions.  I credit McColgin's description of the process by which he explained the advisory Sentencing Guidelines to Holder.  That process clearly meets an objective standard of reasonableness and satisfies prevailing professional norms.  Therefore I conclude that Holder has failed to meet his burden of proof to show that McColgin's representation was constitutionally deficient.

### B.   Prejudice

Even where counsel's deficient performance has been established, however, "it is often quite difficult for petitioners who have acknowledged their guilt to satisfy *Strickland's* prejudice prong."  *Padilla*, 559 U.S. at 371 n.12.  "[T]o obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."  *Id.* at 372 (citing *Roe v. Flores-Ortega*, 528 U.S. 470 (2000); *see also Hill*, 474 U.S. at 59–60; *United States v. Arteca*, 411 F.3d 315, 321–22 (2d Cir. 2005).  Here, it simply would not have been rational for Holder to reject the government's plea offer.

In general, the Second Circuit "requires some objective evidence other than defendant's assertions to establish prejudice."  *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003) (citing *United States v. Gordon*, 156 F.3d 376, 380–81 (2d Cir.1998)).  Particularly where there is "extensive evidence of his guilt," the petitioner must articulate a convincing basis on which he would have foregone "the substantial benefit

resulting from his plea" and risked a harsher sentence at trial. *Boakye v. United States*, No. 09 Civ. 8217, 2010 WL 1645055, at *5 (S.D.N.Y. Apr. 22, 2010); *see also Arteca*, 411 F.3d at 321 (no showing of prejudice where defendant was aware that plea agreement's sentencing estimate was not binding, received benefits from the plea deal, and had "not provided any persuasive reason for doubting the strength of the government's case against him").

Holder points to no objective evidence which indicates that it would have been rational for him to reject the plea offer and proceed to trial. Holder has never asserted his innocence to the charges to which he pleaded guilty and the evidence described by the prosecutor–including seven controlled purchases of cocaine from Holder, cash seizures, financial records, and coconspirator testimony–was overwhelming. More significantly, Holder received substantial benefits by pleading guilty. First, he avoided a superseding indictment alleging that the conspiracy involved the distribution of more than five kilograms of cocaine, which, when combined with Holder's prior drug conviction, would have exposed Holder to a 20-year mandatory minimum sentence.[4] Second, by pleading guilty in the face of overwhelming evidence, Holder manifested an acceptance of responsibility, a crucial step in persuading a sentencing judge that a departure or variance was warranted. In fact, Holder, a person with a prior drug felony conviction, achieved a substantial departure by his plea of guilty, despite directing a

---

[4] In fact, at sentencing, Judge Sessions described the 15–50 kilogram drug quantity as a conservative estimate. (Doc. 145 at 59–60.) Of course, at a trial the government would have been required to prove this quantity beyond a reasonable doubt. Nevertheless, by his plea, Holder avoided this exposure.

drug conspiracy which Judge Sessions described as extraordinarily serious.  (Doc. 145 at 89).  Third, Holder was able to achieve a dismissal of charges against his girlfriend, Erin McKenna, which was such a significant goal for Holder that it was included in the plea agreement.  Where, as here, a defendant "obtains a meaningful strategic benefit by pleading guilty, most courts consider it unlikely that an involuntary or ill-advised plea ensued."  *Cusano v. United States*, No. 05 Civ. 7177(WHP), 2007 WL 4142771, at *3 (S.D.N.Y. Nov. 16, 2007) (internal quotation marks omitted).  Given the wealth of evidence of Holder's guilt and the substantial benefits arising from his decision to plead guilty, Holder fails to show that it would have been rational to proceed to trial on a more serious indictment.  Holder therefore fails *Strickland's* required showing of prejudice.

## III.    Ineffective-Assistance Claim: Judicial Fact-Finding

Holder asserts that Attorney McColgin was ineffective for failing to object to Judge Sessions's determination of the drug quantity under the advisory Sentencing Guidelines.  Relying on *Alleyne v. United States*, 133 S. Ct. 2151 (2013), Holder describes this as improper "judicial fact finding," in violation of the Sixth Amendment.  He further asserts that, as a result of this judicial fact-finding, he faced a higher mandatory minimum sentence than required by his plea of guilty.  (Doc. 154-1 at 15–16.)  Holder's claims are quickly disposed of, as they completely lack merit.

Because the Sentencing Guidelines are advisory rather than mandatory, *see United States v. Booker*, 543 U.S. 220 (2005), application of guidelines enhancements that do not increase the statutory maximum or minimum penalty neither implicates nor violates a defendant's Sixth Amendment right to a jury trial.  The Supreme Court explained:

> In holding that facts that increase mandatory minimum sentences must be submitted to the jury, we take care to note what our holding does not entail. Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment.

*Alleyne*, 133 S. Ct. at 2163; *see United States v. Singletary*, 458 F.3d 72, 80 (2d Cir. 2006) (holding that judicial fact-finding at sentencing is "permissible—indeed, required—under an *advisory* Guidelines regime").  The relevant statute here, 21 U.S.C. § 841(b)(1)(B), provides for imprisonment for a term of up to 40 years, and the district court's drug-quantity determination and application of the enhancements affected only the guidelines recommendation and not the statutory sentencing range.  Holder thus did not face a higher mandatory minimum sentence through the operation of the Sentencing Guidelines; Attorney McColgin's performance was not deficient; and *Alleyne* affords Holder no relief.  *See United States v. Jacques*, 555 F. App'x 41 (2d Cir. 2014); *United States v. Harakaly*, 734 F.3d 88 (1st Cir. 2013).

## IV.    Ineffective-Assistance Claim: Direct Appeal

On December 9, 2014, the Court of Appeals issued a summary order affirming the judgment and sentence against Holder.  On December 17, 2014, Holder wrote to counsel stating his desire to pursue all further avenues of relief, including a request for reconsideration, en banc review, and a petition for a writ of certiorari.  (Doc. 154-4.) According to another attorney at the Office of the Federal Public Defender, the letter "did not reach [McColgin] in a timely manner," and thus no timely motion was filed by that office.  (Doc. 154-5.)  On January 5, 2015, the Court of Appeals issued its mandate.

Thereafter, when Holder's letter was discovered, McColgin promptly filed a motion on January 8, 2015, seeking a recall of the mandate and for an extension of time in which to file a motion for reconsideration or to a petition for a rehearing en banc.  (*Id*.)  On January 16, 2015, the Court of Appeals denied the motion.

Holder now asserts that the failure to file a timely motion for reconsideration or a petition for rehearing en banc constitutes ineffective assistance of counsel.  This claim is meritless.  Preliminarily, en banc review or a rehearing is disfavored and will not ordinarily be ordered by a federal appellate court unless the case involves a question of "exceptional importance."  Fed. R. App. P. 35(a)(2).  Holder fails to articulate how the appeal involved a question of exceptional importance.

As this Court observed in *United States v. Smith*, No. 1:04-cr-00093-jgm-2, 2011 WL 1211561, at *7 (D. Vt. Mar. 29, 2011), the Second Circuit has held that a defendant has "no constitutional right to the assistance of counsel in preparing a certiorari petition." *Pena v. United States*, 534 F.3d 92, 96 (2d Cir. 2008) (per curiam) (affirming denial of § 2255 motion where defendant argued counsel should have petitioned for writ of certiorari and informed him of his right to do so).  "While the Supreme Court has interpreted the Constitution to provide criminal defendants the right to appointed counsel on first-tier appeals, including permissive ones, the Court has not found the right to exist with respect to certiorari review and other discretionary appeals."  *Id*. at 94–95 (citing *Halbert v. Michigan*, 545 U.S. 605, 610 (2005); *Murray v. Giarratano*, 492 U.S. 1, 10 (1989); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Ross v. Moffitt*, 417 U.S. 600,

610 (1974)).  In *Smith*, this Court concluded that the same analysis applies to requests for reconsideration or rehearing, including rehearing en banc.  *Smith*, 2011 WL 1211561, at *7 (citing *Prousalis v. United States*, Nos. 06 Civ. 12946(DLC), 03 CR. 1509, 2007 WL 2438422, at *14 (S.D.N.Y. Aug. 24, 2007)).  Holder fails both the performance and prejudice prongs of *Strickland*.  There can be no violation of the constitutional right to effective assistance of counsel where there is no constitutional right to counsel.  Moreover, counsel sought the relief Holder now seeks, and that request was denied by the Court of Appeals.

Holder argues that *Nnebe v. United States*, 534 F.3d 87 (2d Cir. 2008), compels a different conclusion.  In *Nnebe*, the petitioner brought a § 2255 action asserting ineffective assistance of counsel where counsel had assured Nnebe that counsel would file a petition for a writ of certiorari.  Significantly, in his appeal, Nnebe abandoned his constitutional claim of ineffectiveness under the Sixth Amendment.  The Court of Appeals choose to construe Nnebe's motion as a motion to recall the mandate and afforded the petitioner an opportunity to petition for a writ of certiorari, despite Nnebe's failure to satisfy the requirements under § 2255.  *Id.* at 91.  The Court described this course of action as "an unusual one that is used sparingly and only in extraordinary circumstances."  *Id*. at 89.  *Nnebe* is of no assistance to Holder because in this matter, the Court of Appeals has denied the extraordinary and discretionary appellate relief which Holder now seeks.  Thus, even assuming counsel's failure to seek en banc review or a rehearing on a timely basis was deficient performance, Holder cannot establish prejudice.

### V.     Evidentiary Hearing Not Required

In general, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  28 U.S.C. § 2255(b).  This requirement of a hearing, however, does not necessarily "imply that a movant must always be allowed to appear in a district court for a full hearing . . . .  [T]he statute itself recognizes that there are times when allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner." *Machibroda v. United States*, 368 U.S. 487, 495 (1962); *see also* 28 U.S.C. § 2255(c) ("A court may entertain and determine such motion without requiring the production of the prisoner at the hearing."); *Petrucelli v. United States*, Nos. 05 Civ. 9582(TPG), 02 Cr. 099(TPG), 2009 WL 4858081, at *13 n.1 (S.D.N.Y. Dec. 15, 2009) ("To warrant an evidentiary hearing, a habeas petitioner must raise detailed and controverted issues of fact supported by competent evidence, which, if proved, entitle him to relief.").  It is "within the district court's discretion to choose a middle road," without resort to an evidentiary hearing, in adjudicating the merits of a § 2255 motion.  *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001); *see also Pham*, 317 F.3d at 185 ("[T]he district court has wide discretion in developing the record it will use to determine a habeas petition . . . ."); *Raysor v. United States*, 647 F.3d 491, 494 (2d Cir. 2011); Rules Governing Section 2255 Proceedings, Rules 7, 8 (permitting the expansion of the record through submission of

documents, exhibits, and affidavits, and leaving to judicial discretion the determination of "whether an evidentiary hearing is warranted").

In light of the submission of affidavits from Holder and Attorney McColgin, I conclude that the current record is sufficient for a proper assessment of Holder's Motion. *See United States v. Coleman*, Crim. Action No. 1:10-CR-110-2, 2013 WL 708119, at *7–8 (D. Vt. Jan. 24, 2013) (Conroy, Mag. J.) (resolving § 2255 motion alleging ineffective assistance on affidavit submitted by counsel, and collecting cases to that effect).

## Conclusion

Based on the foregoing, I recommend that Holder's § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Doc. 154) be DENIED.

Dated at Burlington, in the District of Vermont, this 1st day of October, 2015.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).